# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROXSAN YOUNG, | Case No. 1:21-cv-00654-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |

_____/

## I.   INTRODUCTION

Plaintiff Roxsan Young ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 10.)

## II.     BACKGROUND

Plaintiff was born on July 5, 1956, and she was 61 years old on the current alleged disability onset date. (Administrative Record ("AR") 46, 86, 122, 137, 154, 168.) She has at least a high school education. (AR 86, 686.)

In a decision dated February 13, 2015, an Administrative Law Judge ("ALJ") rejected Plaintiff's prior application for DIB payments, assessing a residual functional capacity ("RFC")[3] of sedentary work with additional physical restrictions. (AR 76–88.) On remand from the Appeals Council, in a decision dated May 26, 2017, an ALJ again rejected Plaintiff's application for DIB payments and found that she had the RFC to perform sedentary work. (AR 99–112.)

In the instant case, on March 16, 2018, Plaintiff protectively filed an application for SSI payments, alleging that she became disabled on March 17, 2018, due to approximately 18 illnesses, injuries, or conditions. (AR 285–95, 302–08.) On April 25, 2018, Plaintiff again filed an application for DIB benefits with the same alleged onset date. (AR 295–301.)

**A.     Relevant Medical Evidence[4]**

The ALJ relied on the following medical evidence in the present case. Plaintiff has a history of osteoarthritis with multiple sites of cartilage loss in both knees. (AR 616.) She previously underwent surgery on her right shoulder and carpal tunnel release (AR 177, 545), and she was diagnosed with fibromyalgia in 2013 (AR 147, 520, 573).

Plaintiff had arthroscopic surgeries in 1994, 2006, and 2010, and reported minimal benefits. (AR 476, 479, 626, 733.) On November 7, 2017, Plaintiff underwent an examination by Dr. Carolyn Black in which she complained of feeling her knees grinding, reported that she remained active with housework in spite of pain, and requested joint injections. (AR 616.) Dr. Black noted

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling 96-8p (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

[4] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues in the instant matter.

2

that Plaintiff's osteoarthritis was still bothersome after conservative management and her request for joint injections was a reasonable next step. (AR 619.)

On January 12, 2017, Plaintiff was seen by Dr. Priya Jayachandran for a routine follow up visit where she complained of joint pains at multiple sites, the worst of which included her knees, hands, and shoulder. (AR 647.) Regarding Plaintiff's carpal tunnel syndrome, Dr. Jayachandran's assessment indicated negative Tinel's sign and Phalen's test, but noted that x-rays showed degenerative changes. (AR 650.) On March 20, 2018, Dr. Black conducted a physical examination of Plaintiff and found normal range of motion as to her shoulders, elbows, writs, and fingers; no signs of synovitis; 5/5 strength grip; elbow flexion, 4/5 elbow extension bilaterally; and 5/5 arm abduction. (AR 454, 573, 609–10.)

On August 31, 2018, Plaintiff was seen by Dr. Kartheek Dasari and complained of pain and reported that previous medications failed to alleviate her symptoms. (AR 604.) Around the same time, Dr. Jonathan Pham noted that Plaintiff's fibromyalgia was "uncontrolled." (AR 605.) Plaintiff's symptoms persisted, and on April 3, 2019, PA Ramandeep Aulakh discussed changes to Plaintiff's medications as well as short and long-term side effects. (AR 688.)

On August 15, 2019, PA Aulakh conducted a physical examination and noted that Plaintiff presented with acromioclavicular joint tenderness and limited range of motion in the left shoulder. (AR 679.) On January 28, 2020, Plaintiff was seen by PA Aulakh, who noted a positive x-ray for degenerative joint disease and mild changes, as well as tenderness, bony deformity, and malalignment at the sternoclavicle joint with regard to Plaintiff's muscles. (AR 666–67.) This assessment also indicated that Plaintiff recently experienced more pain and tenderness in the anterior shoulder, feeling a click, and that pain radiated toward the trapezius area up to her neck, worsening her headaches. (AR 666–67.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on August 28, 2018, and again on reconsideration on December 28, 2018. (AR 21, 186–92, 198–204.) Consequently, Plaintiff requested a hearing before an ALJ. (AR 21.)

On May 4, 2020, Plaintiff appeared telephonically with counsel and testified before an

ALJ as to her alleged disabling conditions. (AR 21, 42.) A vocational expert ("VE") also testified at the hearing. (AR 21, 66–71.)

**C.     The ALJ's Decision**

In a decision dated July 1, 2020, the ALJ found that Plaintiff was not disabled. (AR 21–34.) The ALJ first stated that she did not adopt the specific findings made by the prior ALJ under the sequential evaluation process for determining disability. (AR 21.) The ALJ determined that Plaintiff had rebutted the "presumption of continuing non-disability," and the prior ALJ's decision had no res judicata effect because there had been a showing of "changed circumstances" and "new and material evidence" as to the issue of disability. (*Id*.) The ALJ found that this "new and material evidence" demonstrating changed circumstances included Plaintiff's testimony at the hearing and documentary medical evidence submitted after the prior ALJ's decision. (*Id*.)

The ALJ then conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520, 416.920. (AR 22–34.) The ALJ decided Plaintiff met the insured status requirements of the Act through September 30, 2020, and she had not engaged in substantial gainful activity since March 17, 2018, the alleged onset date (step one). (AR 24.) At step two, the ALJ found Plaintiff's following impairments to be severe: osteoarthritis, fibromyalgia, and right shoulder impairment. (*Id*.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 28.)

The ALJ next assessed Plaintiff's RFC and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your [RFC] . . . . We use this [RFC] assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined Plaintiff had the RFC:

> to perform light work as defined in 20 [§§] CFR 404.1567(b) and 416.967(b) except [Plaintiff] can occasionally climb, kneel, crouch, and crawl; occasionally reach overhead with the right upper extremity; avoid concentrated exposure to work hazards such as moving machinery and unprotected heights; alternate between standing and sitting every thirty minutes for a brief position change while continuing to work at the work station; and would need to avoid unprotected heights and moving dangerous machinery.

(AR 28–29.)[5]  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 30.)

The ALJ found that Plaintiff is capable of performing past relevant work as an office assistant, file clerk, and order clerk, and this work does not require the performance of work-related activities precluded by her RFC (step four). (AR 33.)  The ALJ concluded that Plaintiff was not disabled from March 17, 2018, through the date of this decision. (AR 33.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on October 1, 2020. (AR 7–12.)  Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

### III.    LEGAL STANDARD

#### A.    Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the [Act]." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ

---

[5] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b).  Although the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id.*

5

proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [his or her] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [his or her] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097. "Substantial evidence" means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "'Substantial evidence is more than a mere scintilla but less than a preponderance.'" *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "'[t]he court will uphold the

ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.'" *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020); *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). The Court must instead determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts may not reverse an ALJ's decision on account of an error that is harmless. *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). Harmless error "exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal quotation marks omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

**IV.     DISCUSSION**

Plaintiff asserts that the ALJ misapplied the doctrine of res judicata under the Ninth Circuit's decision in *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988). (Doc. 17 at 5–8.) Specifically, she contends that the ALJ erred by increasing her RFC to the light level in violation of *Chavez*, when it had been previously found in the prior ALJ decision to be sedentary. (*Id.*) The Commissioner disagrees, asserting that Plaintiff is not entitled to a presumption that she was limited to a sedentary RFC, as found by the prior ALJ, because the present ALJ found "new and material evidence" relevant to that prior finding. (Doc. 18 at 5–13.) Thus, the Commissioner contends the decision as a whole is supported by substantial evidence. (*Id.* at 13–14.)

As discussed below, the Court reverses and remands for further administrative proceedings. The ALJ's finding that Plaintiff is capable of performing light work (AR 28–29) is not supported by substantial evidence and therefore, contrary to *Chavez* and the Social Security Acquiescence Ruling, and the ALJ erroneously failed to give "some res judicata consideration" to the prior ALJ's RFC assessment of sedentary work. *See Chavez*, 844 F.2d at 694; SS AR 97-4(9), 1997 WL 742758, at *2–*3.

**A.   Cases Involving Prior Final Agency Decisions of Nondisability**

In cases involving a prior final agency decision of nondisability where the claimant subsequently files a new application for benefits, the prior administrative decision triggers a presumption of continuing nondisability. *Chavez v*, 844 F.2d at 692–94 (where ALJ made "no reference" to prior ALJ's decision and "failed to consider the first judge's findings," the principles of res judicata made the first judge's determination binding). To overcome this presumption of continuing nondisability, the claimant "must prove 'changed circumstances' indicating a greater disability." *Id*. at 693; *see also id*. at 694 (because the defendant failed to identify "'new'" information that "had not been presented to the first [ALJ]", it was error for the second ALJ to "reopen the prior determinations concerning the claimant's ability to perform his past relevant work"); *cf. Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (applying *Chavez* and finding that, where the "entirety of the medical evaluations presented with respect to the [claimant's] present application were conducted after [claimant's] initial disability determination [,] [t]hese evaluations necessarily presented new and material information not presented to the first ALJ").

Social Security Acquiescence Ruling ("SS AR") 97–4(9) provides guidance on *Chavez*:

> In order to rebut the presumption of continuing nondisability, a claimant must prove "'changed circumstances' indicating a greater disability." In addition, the court [in *Chavez*] indicated that where the claimant rebuts the presumption by proving a "changed circumstance," principles of res judicata require that certain findings contained in the final decision by the ALJ on the prior claim must be given some res judicata consideration in determining whether the claimant is disabled with respect to the unadjudicated period involved in the subsequent claim. The court concluded that where the final decision on the prior claim, which found the claimant not disabled, contained findings of the claimant's [RFC], education, and work

8

experience, [the agency] may not make different finding in adjudicating the subsequent disability unless there is new and material evidence relating to the claimant's [RFC], education or work experience.

SS AR 97-4(9), 1997 WL 742758, at *2. ).[6]  Although the presence of additional impairments rebuts the general presumption of nondisability, that alone is insufficient to rebut the specific findings of the prior decision.  *Chavez*, 844 F.2d at 694.  Instead, there must be "new and material" evidence relating to each specific finding.  *See* SS AR 97–4(9), 1997 WL 742758, at *3).

After a final agency determination of nondisability, where the claimant experiences improvement in the nature of his or her limitations and pain allegedly suffered, an ALJ may determine that a claimant's condition has improved.  *See Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985) (where claimant's first application for benefits was denied, the presumption of continuing nondisability applied, and ALJ properly determined that claimant's condition had "improved rather than deteriorated" in the period leading to the second application for benefits).  "In general, the Commissioner bears the burden of establishing that a claimant has experienced medical 'improvement' that would allow him [or her] to engage in substantial gainful activity." *Chao v. Astrue*, No. 2:10–cv–01972 KJN, 2012 WL 868839, at *5 (E.D. Cal. Mar. 13, 2012) (citing *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983) (to terminate benefits after they were previously awarded, it is the defendant's burden to "come forward with evidence of improvement," and such evidence must be reviewed under the "substantial evidence standard").

**B.    The ALJ Improperly Found that New and Material Evidence Supported Adjusting Plaintiff's RFC**

In 2017, the ALJ assessed the following RFC:

[T]he residual functional capacity to perform sedentary work as defined in 20 CFR [§§] 404.1567(a) and 416.967(a) except she can lift and carry 10 pounds occasionally and less than 10 pounds frequently, pushing and pulling within those weight limits, stand and walk two hours and sit six hours in an eight-hour workday with no climbing of ladders, ropes, or scaffolds.  She cannot perform any work

---

[6] Acquiescence Rulings are Social Security Administration policy statements issued in response to the Court of Appeals' holdings, and they "describe the administrative case and the court decision, identify the issue(s) involved, and explain how we will apply the holding, including, as necessary, how the holding relates to other decisions within the applicable circuit."  20 C.F.R. § 404.985(b).  They are binding on the Social Security Administration, 20 C.F.R. § 402.35(b)(2); and are accorded deference by reviewing courts, *McNabb v. Barnhart*, 340 F.3d 943, 944–45 (9th Cir. 2003).

9

around hazards such as working at unprotected heights, operating fast or dangerous machinery, or driving commercial vehicles. She must avoid concentrated exposure to workplace hazards such as uneven, slippery terrain. She needs the ability to rest and elevate her legs for 15 minutes every two hours falling within the normal breaks and lunch periods. She cannot perform forceful gripping, kneeling, or crawling. She can perform frequent handling, fingering, and feeling. She can perform all other postural activities occasionally. She cannot perform overhead reaching with the bilateral upper extremities, but reaching at shoulder level is okay. She cannot tolerate prolonged exposure to concentrated cold.

(AR 104.)

In the present decision, the ALJ changed the physical RFC from what amounted to sedentary work to light work and eliminated several wholesale restrictions, including climbing, kneeling, or crawling, as well as reaching overhead with the right upper extremity:

> to perform light work as defined in 20 [§§] CFR 404.1567(b) and 416.967(b) except [Plaintiff] can occasionally climb, kneel, crouch, and crawl; occasionally reach overhead with the right upper extremity; avoid concentrated exposure to work hazards such as moving machinery and unprotected heights; alternate between standing and sitting every thirty minutes for a brief position change while continuing to work at the work station; and would need to avoid unprotected heights and moving dangerous machinery.

(AR 28–29.)

In not giving res judicata effect to the RFC findings in the 2017 decision, which provided for sedentary work, the ALJ concluded that "new and material" evidence showed "changed circumstances" to the point where Plaintiff is now capable of light work. (AR 21, 28–29.) This finding, however, is not supported by substantial evidence.

For example, with regard to Plaintiff's carpal tunnel syndrome—which was found to be a severe impairment in 2017 (AR 102)—the ALJ cited evidence of a physical examination by Dr. Black on March 20, 2018, indicating the following findings: normal range of motion as to Plaintiff's shoulders, elbows, writs, and fingers; no signs of synovitis; 5/5 strength grip; elbow flexion, 4/5 elbow extension bilaterally; and 5/5 arm abduction. (AR 24; *see also* AR 454, 573, 609–10.) The ALJ also cited to an assessment on January 12, 2017, indicating negative Tinel's sign and Phalen's test. (AR 24; *see also* AR 650.) In citing this evidence, the ALJ concluded that there was "no evidence that this condition caused more than minimal functional limitations," and deemed Plaintiff's carpal tunnel syndrome "non-severe." (AR 24.) This "mere scintilla" of

evidence alluding to improvement, however, does not amount to substantial evidence.  *See Ryan*, 528 F.3d at 1198.

Similarly, the prior ALJ's 2017 decision found disorder of the bilateral knees to be a severe impairment.  (AR 102.)  In the present decision, the ALJ noted that Plaintiff reported difficultly completing activities of daily living due to pain in her knees (AR 29), but reasoned that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence, including examinations showing that her knee was stable, she had full range of motion in her extremities, and she reported being able to walk around the house (AR 30).  The ALJ also determined, however, that Plaintiff's osteoarthritis was a severe impairment (AR 24) and that her exertional, postural, and environmental limitations accounted for in the RFC were supported by the physical impairments, including osteoarthritis of the knees (AR 32).  Simply stated, other than the ALJ's isolated finding that res judicata does not apply (AR 21), the words "improve," "improved," or "improvement" are almost entirely missing from the ALJ's decision, *see Guerrero v. Kijakazi*, No. 1:20–cv–01766–SKO, 2022 WL 1811319, at *8 (E.D. Cal. Jun. 2, 2022), and there is no citation to or acknowledgement of the *Chavez* decision.

The ALJ's conclusions regarding the other impairments found to be severe in 2017—disorder of the spine and disorder of the bilateral shoulders post-surgery (AR 102)—fare no better. The ALJ briefly mentioned that Plaintiff underwent imaging indicating mild degenerative changes in the cervical spine, but no high-grade canal or foraminal stenosis or significant neural impingement was identified.  (AR 25; *see also* AR 666–67.)  Based on this minimal evidence, the ALJ again determined there was "no evidence that this condition caused more than minimal functional limitations," and deemed Plaintiff's degenerative disc disease "non-severe."  (AR 25–26.)  And, despite repeatedly mentioning how examinations revealed normal range of motion as to Plaintiff's shoulders (AR 30–32), the ALJ found Plaintiff's right shoulder impairment to be severe (AR 24, 32).  In sum, the ALJ's failure to identify more than a mere scintilla of evidence—much less ***substantial*** evidence—of medical improvement in support of the conclusion that Plaintiff could perform light work is erroneous.  *See Garcia v. Astrue*, No. C-07-05469 JCS, 2008 WL 4104342, at *9 (N.D. Cal. Sept. 4, 2008) (ALJ erred by not citing to substantial evidence of medical

11

improvement in support of his conclusion that Plaintiff could perform light work).

The Court also notes that the medical evidence in the record shows, at best, minimal improvement of these impairments since 2017, and, in some instances, that Plaintiff's symptoms have worsened over time. For example, the same assessment on January 12, 2017, cited by the ALJ relating to Plaintiff's carpal tunnel syndrome, noted that x-rays revealed degenerative changes. (AR 650.) A physical examination by PA Aulakh revealed acromioclavicular joint tenderness and limited range of motion in Plaintiff's left shoulder. (AR 679.) Furthermore, the assessment by PA Aulakh from January 28, 2020, cited by the ALJ relating to Plaintiff's degenerative disc disease noted a positive x-ray for degenerative joint disease and mild changes. (*See* AR 666–67.) This assessment also indicated that Plaintiff recently experienced more pain and tenderness in the anterior shoulder, feeling a click, and that pain radiated toward the trapezius area up to her neck, worsening her headaches. (AR 666–67.)

Furthermore, the ALJ failed to explain how the new severe impairments of osteoarthritis and fibromyalgia—conditions not evaluated in 2017 when a more restrictive RFC was assessed—could demonstrate ***greater*** disability thereby overcoming the *Chavez* presumption of non-disability and, at the same time, demonstrate that Plaintiff had ***fewer*** exertional limitations than she did in 2017. *See Guerrero*, No. 2022 WL 1811319, at *9. For example, the ALJ described how fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least three months," and that fibromyalgia must be established by appropriate medical evidence, not solely a physician's diagnosis, in order to be deemed a medically determinable impairment. (AR 29.) The ALJ further explained that she must determine if Plaintiff's fibromyalgia symptoms have improved, worsened, or remained stable, as well as establish the physician's assessment over time of Plaintiff's physical strength and functional abilities. (*Id*.) With these considerations in mind, the ALJ found that fibromyalgia was a severe impairment, and yet, formulated a higher RFC. *See Santillan v. Astrue*, No. CV–07–998–PHX–MHM, 2008 WL 4183026, at *10 (D. Ariz. Sept. 8, 2008) (finding that "later-developed impairments are inconsistent with the concept that the [p]laintiff experienced medical *improvement* resulting in a higher [RFC]," and therefore the "readjudication of [RFC] is

unsupported by the record and constituted legal error.").

In sum, the ALJ failed to meet her burden of supporting the finding that the prior ALJ's decision had no res judicata effect (AR 21) such that Plaintiff was no longer was limited by the 2017 RFC of sedentary work, and the medical evidence in the record tends to show the contrary. As such, the Court finds ALJ committed reversible error by failing to give "some res judicata consideration" to the RFC findings in the 2017 decision.[7] *See Chavez*, 844 F.2d at 694 (the first ALJ's findings concerning the claimant's RFC, capacity, education, and work experience "are entitled to some res judicata consideration in subsequent proceedings."); SS AR 97-4(9), 1997 WL 742758, at *3 ("If the claimant rebuts the presumption, adjudicators then must give effect to certain findings . . . contained in the final decision by an ALJ or the Appeals Council on the prior claim[] when adjudicating the subsequent claim.  For this purpose, the Ruling applies only to a finding of a claimant's [RFC] . . . ."); *see also Drake*, 805 Fed. Appx. at 468 ("Because there is no evidence that the limitations reflected in the 2011 Decision's RFC findings improved, they should have been considered in the formulation of the 2015 Decision's RFC finding," and thus "the ALJ committed reversible error in failing to give res judicata effect to the [RFC] findings in the 2011 Decision."); *Elizabeth C.*, 2021 WL 62438, at *3 (finding harmful error where the ALJ failed to show that new and material evidence demonstrates that the plaintiff was capable of light work and fewer restrictions than the past determination of sedentary work).

## C.     Remand for Further Proceedings is Appropriate

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for 'additional investigation or explanation.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  The Ninth Circuit recognized a limited exception to this typical course, "sometimes referred to as the 'credit-as-true' rule," where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100.  In determining

---

[7] The error is not harmless because, although the VE very briefly testified about sedentary jobs (*see* AR 70), the ALJ did not ask the VE about sedentary work further limited by the additional restrictions found in the medical record and incorporated in the present RFC, such as alternating between standing and sitting every 30 minutes for a brief position change while continuing to work at the workstation (AR 28–29). *See, e.g., Drake v. Saul*, 805 Fed. Appx. 467, 468–69 (9th Cir. 2020); *Elizabeth C. v. Comm'r of Soc. Sec.*, No. C20-5025-BAT, 2021 WL 62438, at *3 (W.D. Wash. Jan. 7, 2021); *Guerrero*, No. 2022 WL 1811319, at *9 n.7; *see generally Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *Tommasetti*, 533 F.3d at 1038.

13

whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As for the last inquiry, additional "[a]dministrative proceedings are generally useful where the record 'has [not] been fully developed,'" where "there is a need to resolve conflicts and ambiguities," or where "the 'presentation of further evidence . . . may well prove enlightening' in light of the passage of time." *Id*. Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689.

Here, the Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable because additional administrative proceedings would be useful. As discussed above, the ALJ improperly found that new and material evidence supported adjusting Plaintiff's RFC. The matter should be remanded for the ALJ to reevaluate the medical evidence, reconsider all of the opinions, and reconsider Plaintiff's RFC in light of the *Chavez* presumption of non-disability. On remand, if the ALJ again finds that new and material evidence supports a higher RFC, the ALJ can then provide an adequate discussion and explanation of the specific reasons under *Chavez. See Smith v. Kijakazi*, No. 1:21–cv–01160–SKO, 2022 WL 4082290, at *8 (E.D. Cal. Sept. 6, 2022) (citing *Payan v. Colvin*, 672 Fed. Appx. 732, 733 (9th Cir. 2016)). Upon reconsideration, the ALJ will also need to reevaluate her conclusions at steps four and five of the disability determination in light of any changes to Plaintiff's RFC.

## V.  CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. On remand, the ALJ should reevaluate RFC, the medical record, testimony, and any step of the five-step sequential analysis from step two onward; afford a new hearing; and permit, if needed, any supplemental evaluations of Plaintiff's mental or physical RFC.

The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Roxsan Young

and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

| Dated: | **January 9, 2023** | /s/ *Sheila K. Oberto* |
|---|---|---|
| | | UNITED STATES MAGISTRATE JUDGE |